## STARR *v.* E. and W. M. STRONG.

It is not necessary that an actual payment should be made, in order to protect a purchaser, except where there is a prior equity which is injured or affected by the legal title acquired by the purchaser. As against all subsequent equities, as well as liens, the giving of securities for the price, is a payment which gives to him the character of a purchaser in good faith.

Where a father, whose debts both as principal and surety were less than his property, and who had no expectation of being charged with the debts for which he was surety, conveyed his farm to his son, and for the price received a note and mortgage on the farm for its full value, payable in twenty-six equal annual instalments ; *Held*, that the circumstances did not establish a fraud as against the creditors of the father.

June 19 ; August 29, 1844.(*a*)

THIS was a judgment creditor's suit, as against Eli Strong, and it sought to avoid as fraudulent, a conveyance of his farm in Orwell, Oswego County, made by him to his son William M.

---

(*a*) Affirmed on appeal by the Chancellor in October, 1844.

on the 9th of February, 1838. At that time Eli S. stood as the accommodation indorser of a mercantile firm, for about $600 on notes then running, upon which the complainant's judgments were afterwards recovered. He was also liable upon another note of $386 of which half was his own debt, and he owed William M. about $300. His personal property was worth a little more than that sum, and the farm was worth about $1500.

In payment for the farm, William M. gave his mortgage on the same, together with a note, for $2600 payable in equal annual instalments of $100 each, without interest. The mortgage was recorded in May, 1838, and in December, 1838, Eli S. having become embarrassed by his indorsements, assigned the note and mortgage for the benefit of his creditors.

The answer of the defendants denied the charges of fraud contained in the bill.

Reference is made to the opinion for some additional facts.

There were several other questions raised in the case, which are omitted in the report of the decision.

*G. N. Titus*, for the complainant.

*W. Curtis Noyes*, for the defendants.

THE ASSISTANT VICE-CHANCELLOR. (After disposing of the prior points, proceeded thus.)

The terms of the sale from Eli Strong to his son, constitute the next ground of the charge of fraud.

It is urged that the conveyance was voluntary, and that W. M. Strong was not a *bona fide* purchaser.

This is in no sense a *voluntary* conveyance. A full price was secured to be paid, by the note and mortgage. No interest, present or future, was reserved to the son, in those securities, and they have since gone to E. Strong's assignee.

It is not necessary that an actual payment should be made for the land, in order to protect a purchaser, except where there is a prior equity which is injured or affected by the legal title acquired by the purchaser. As against all subsequent equities, as well as liens, the giving of securities for the price, is a payment

Starr v. Strong.

which will give to him the character of a purchaser in good faith. See *Seward* v. *Jackson*, 8 Cowen, 406; *Jackson ex dem. Peek* v. *Peek*, 4 Wend. 300.  Here the complainant had no lien nor any equity which affected the premises when W. M. Strong received his deed.

Then as to the terms of the sale in question.  The mortgage was given for the whole purchase money, and it was made payable in twenty-six equal yearly instalments, without interest.

It is not claimed that W. M. Strong pays in this mode, an inadequate price.  But the term of credit is very unusual.

This is true, but it is not unheard of.  A case was argued before me at the late March term, in which a mortgage for the purchase money was made payable at the end of twenty years, with no intervening payments, except interest.  It was a transaction between strangers, a matter of business, the good faith of which was not questioned.

Here the parties were father and son.  The father retiring from active life, gave to the son a liberal opportunity to pay for this little farm, in sums which would suffice for his wants to the probable end of his days.

Such transactions are not infrequent in a farming population, as the reports of our courts, as well as our experience teach us.

The evidence in this case shows that when this arrangement was made, there was nothing in E. Strong's situation to lead him to imagine that he would have to pay the complainant's debt, or any other debt of A. Strong & Co.  If he had been loaded with debts of his own, and suits commenced against him, the terms of the sale would have afforded just ground of suspicion and scrutiny.  But regarding the parties as they were in February, 1837, and especially as they believed they were, the length of credit does not in my judgment, go far towards impeaching the sale.

There was one circumstance which at first struck me as suspicious, which was that the debt to the son should be left outstanding, instead of being applied in payment of a part of the purchase money of the farm.  But the absence of any motive in February to commit a fraud, takes away the force of this circumstance also.  The arrangement as made, was consistent with the father's object, in having the payments equalized over so many

years, as stated in the answer, and with an expectation or even agreement at the same time that W. M. Strong would take the personal property for that debt. With such a view, it was unimportant whether he closed that purchase in February or in May.

The publicity given to the sale and its terms, by recording the deed and mortgage, go far to rebut the suspicion of fraud from the circumstances to which I have adverted.

And it effectually repels the suggestion made by the complainant, that the operation was designed to secure to E. Strong a future benefit out of his property to the exclusion of his creditors.

The mortgage was as open to their pursuit, as the land was before the sale. It is not as was argued, postponing the creditors twenty-six years, or even one year. They could sell the mortgage in less time than they could perfect a title to the land on their judgment. And I have no evidence that the mortgage would not at a forced sale, produce as much as the farm would.

The subsequent disposition made of the mortgage does not indicate any fraudulent intent in the outset, but the contrary. Early in July, 1838, the complainant might have exhibited a creditor's bill against E. Strong, and if Strong had been so much on the alert as is charged upon him, he would have been fully informed of the complainant's progress, and placed the mortgage beyond his reach. Instead of pursuing that course, the mortgage continued in his hands till the ensuing December, when it was assigned for the benefit of his creditors generally.

Upon a careful examination of the case as it is disclosed by the pleadings, I cannot find any sufficient indications of fraud to overcome the force of the answer. And as there has been no property of the judgment debtor discovered by the suit, the bill must be dismissed as to both of the defendants.